*Burch & Johnson*, for plaintiff in error.

*Murphy & Williams* and *Pogue & Pogue*, contra.

---

## MOVING BUILDING ACROSS ELECTRIC CAR TRACKS.

[Circuit Court of Wood County.]

THE TOLEDO, BOWLING GREEN & SOUTHERN TRACTION COMPANY
v. GEORGE STERLING.

Decided, November 28, 1906.

*Use of Streets for Moving Buildings—Interference with Electric Car Line—Evidence as to Permit to Move Building—Reasonable and Unreasonable Requirements by Railway Company—Obstruction of Track by Building—Undue Force in Clearing Track—Damages— Error.*

Having obtained a permit from the mayor of the village to move a building, the owner notified an electric railway company of his intention to cross their track, and a work car and crew were sent at an appointed time to adjust the wires so as to permit the passage of the building. The railway employes, without previous notice that such a requirement would be made, demanded $10 in advance to meet the expense to the company of making the change.

The demand was refused, and when the owner of the building attemped to move it over the track, the work car was purposely run against it with such force as to jar down the chimney and plastering and otherwise injure the building. A jury gave the owner damages. *Held:*

1. The moving of a building upon or across a street is not an ordinary use of the street, but is one which must be exercised subject to such restrictions as may be imposed by the municipal authorities.

2. Proof by the owner of the loss of the permit which he obtained from the mayor for the moving of the building was competent, both for the purpose of showing the contents of the permit, and that the owner was not trespassing in the use which he was making of the street.

3. A requirement by an electric railway company that the moving of a building across its track in the street shall be done in the night time, when there is no current on the wires and the company and traveling public can not be inconvenienced thereby, would be a reasonable requirement, if insisted on by the company.

4. Refusal by the owner to pay in advance the $10 demanded, after consent to move the building across a railway track and the bringing of the building to the track, did not justify the railway employes in resisting the passage of the building, in the absence of previous notice that such a demand would be made, or of ground for believing that the $10 could not be subsequently collected from the owner.

5. But even if the company was warranted in treating the building as an obstruction on its tracks, there was no warrant for the using of undue force in removing it; and the unexplained failure to push the building back on the skids, which apparently could have been easily done, rather than the running of the car violently into it, rendered the company liable for the resulting damages.

6. The admission of incompetent evidence as to offers by many persons to sign the bail bond of the owner of the building after his arrest for obstructing the track, would not justify a reversal of the judgment, where substantial justice has been done by it.

WILDMAN, J. (orally); PARKER, J., and HAYNES, J., concur.

This case is not of much money consequence, for the amount involved is very small—only a hundred dollars besides the costs. But the plaintiff in error, the traction company, seems to deem it of some importance as likely to result in a definition of the rights and liabilities of electric railway companies with reference to the moving of buildings along streets and across the tracks of the companies.

Much argument has been made before us as to the nature of such use of a street and we are disposed to accept the view of counsel for plaintiff in error that the moving of a building upon a street is not an ordinary use, nor one the right to which can be exercised at all times and without license from the proper authority.

The case presented to us was brought by Mr. Sterling, the present defendant in error, against the traction company. In his petition in the court below he alleged that on the 17th of November, 1904, he was attempting to move a dwelling-house owned by him across the railway tracks owned and operated by the defendant traction company, the present plaintiff in error, in the village of Van Buren; that he had crossed a portion of said track when the defendant by its agents and servants in charge of a work car belonging to the defendant unlawfully, willfully and maliciously ran said car into the truck of the wagon upon which said house was loaded, causing the house to drop, and damaged it in the sum of a hundred dollars, and he asked for judgment in that sum.

The case was tried below to a jury, and resulted in a verdict in favor of Sterling.

The defendant, with some denials of the allegations in the petition, including a denial that it unlawfully, willfully and maliciously ran this car into plaintiff's house, by way of cross-petition asserted that the plaintiff, in moving his house upon the tracks of the defendant, recklessly, carelessly and maliciously tore down and misplaced the feed trolley wires over and along the tracks of the defendant company, and blockaded said tracks and caused the cars of the defendant to cease running for a period of ten or more hours, to the great delay, hindrance and inconvenience of the defendant, the traveling public, and the passengers upon defendant's cars, to the damage of the defendant in the sum of one thousand dollars, for which the defendant asked judgment. The claim in the cross-petition did not prevail in the court below.

As already indicated, the use of a highway by persons in moving a building, is an extraordinary use, and one subject to reasonable restrictions. In the case before us, the plaint-

iff testified as a witness, as shown by the record, that prior to the moving of this house he obtained a permit from the mayor of the village of Van Buren.

At the time of the trial it was stated that this permit had been lost, so that he was unable to introduce it in evidence. The testimony as to this matter came under objection, but was permitted by the court and an exception was taken by the defendant company. We think that the evidence was properly received. While the use of the highway for the purpose described is an extraordinary use, it is still one which may be made lawful by license from the proper municipal authority, subject to the restrictions imposed by such authority.

Succinctly, we may state, as was said by Chief Justice Shaw substantially in the case of *Jay* v. *Green*, 4th Cushing, 437, that no man has a right to move a house along a public street, but it may be done under license from a municipal corporation provided reasonable care is used to prevent the obstruction of the street. It is contended here, and with some show of authorities, that where a municipality has granted a franchise to an electric railway company to construct and operate its railway along a public street, that the municipality has thereby vested in the railway company a right which can not be qualified by any action of the municipality; that is to say, that the municipality can not subsequently impair that franchise or withdraw it, or grant to any other person a right to interfere with it. Probably this in a sense is true, and yet the franchise itself is qualified to a certain extent. The right of the public to use street crossings over railway tracks is always implied or understood to remain in the public, notwithstanding the granting of the franchise for the construction and use of the tracks along the highway.

It is not necessary for us to determine, however, whether, against the will of the railway company, the village of Van Buren could grant a privilege to any person to move a house across the company's tracks, in view of the fact than an arrangement was by the undisputed proof entered into between the company, through its general manager, and the plaintiff below,

Mr. Sterling, for the crossing of the company's tracks by the plaintiff, Sterling, with his house.

We deem the ruling of the court below in the admission of the testimony of Sterling that he had been permitted by the municipality to move his house upon the street, a proper ruling. We think so because in the first place he proved the loss of the decument which he describes, so that he might be permitted to give its contents if the original permit would have been proper; and in the next place he had a right to show that he was not a mere trespasser upon the highway; that he had been given by the municipality such rights and all the rights which it had power to give to any person traveling upon the highway in this manner, and so to use the highway at the point where it intersected and crossed the defendant's tracks.

Whether it was necessary for Mr. Sterling to make this showing is perhaps not of any great consequence. We feel that in any event it was not prejudicial to the defendant. There is some conflict of evidence as to the precise arrangement which was made between Sterling and Mr. Smith, the general manager of the defendant company. They have both given their versions of the conversation had between them prior to the attempted moving of the house across the tracks. In substance Mr. Sterling testifies that Mr. Smith gave him authority to move the house without any qualification other than that he should apprise the company of the time when he desired to move it, and that he should pay the expense of disconnecting or moving the wires of the defendant company so as to enable him to cross with his house. He says he inquired whether the company would ask payment for bringing its work car and men to the place where the track was to be crossed, and was informed that they would not make that requirement.

Mr. Smith, on the other hand, testifies that he notified Sterling in this conversation that the company required that crossings of this nature should be made in the night time, when the electric current could be cut off and the wires disconnected without danger, and also that Mr. Sterling would be required to pay the entire cost of disconnecting the wires or so moving them as

to enable the crossing to be made, including the cost of bringing the work train and crew there.

I have not, of course, attempted to give the testimony of either of these witnesses in their exact phraseology, but have endeavored to give the substance of their statements as nearly as I can recall them. The issue as to this arrangement, as with all other matters involved in the case, was submitted to the jury, and we may fairly assume that the jury found in favor of the plaintiff, accepting the version given by the plaintiff below. Neither Mr. Smith nor Mr. Sterling says that the payment of the cost of disconnecting or changing the wires so as to afford facilities for the passage of the house across the track was to be a condition precedent to the moving of the house across; nor does Mr. Sterling seem to have been notified by the general manager of the company that he would have to make any deposit of money in advance, or furnish security for the payment of any expense.

Under these circumstances Mr. Sterling says that he had notified the company that he desired to cross at a certain time; he was somewhat delayed, but finally brought his house to the track of the company along the public highway, and the company being notified, sent a work car with a crew to the point for the purpose of doing what was expected of the company in the matter in aid of this movement of the house across the track. In the conduct of the company at this point, no claim was made that the plaintiff should have brought his house there in the night time, and the regulation or requirement of the company that the house should be moved only in the night season, if there was any such regulation or requirement, seems to have been waived.

In passing, I might say that it is our judgment that if such a requirement had been made and insisted upon, it would seem to be not an unreasonable one, both for the protection of the public from any danger which might be involved in the removal or disconnection of the wires at a time when the current was on, and also to avoid injury to the company by the interruption of its travel, and the inconvenience of passengers in their transportation and the right of the public to travel along the defend-

ant company's track in its cars. Whether or not it would have been a reasonable requirement that a person should make a deposit of estimated expense with the railway company prior to being permitted to cross, is a matter which we are not quite prepared to determine at this time and with regard to which perhaps any expression made at this time by this court would be of little binding weight in view of the fact that under the arrangement made, there was no such requirement as I have stated. We are inclined, however, to the view that at least in a case of irresponsible persons from whom no collection could be made by ordinary process of law, there would be no impropriety in the railway company insisting upon some security that the expense would be paid and that the company would not be compelled to render the service or incur necessary expense until so secured.

All this discussion is suggested by the fact that when Mr. Sterling had brought his house to the track and the company had seemingly waived other conditions and requirements, and was present with its work car and crew for the purpose of aiding in the moving of the house, the question of payment in advance, or the giving of some sort of security by Mr. Sterling was first raised by some employes of the railway company. It was now for the first time insisted that Mr. Sterling should pay the company the sum of ten dollars, or in default of that that he should give some indemnity or security for the payment to them of the expense of disconnecting and raising their wires. He says that he was not prepared to do this at that time; he had not that amount of money, and declined to comply with the demand. He testifies that the noon hour having arrived and the employes of the traction company refusing to do anything until they had eaten their dinner or luncheon, he unhitched his horses from the trucks which were employed in the moving of the house, and that there was a suspension of action for some little time; subsequently one of the employes of the company got upon the roof of the house, and Mr. Sterling says he supposed they were about to permit him to go across without any further demand, and that this man had gone upon the roof for the purpose of lifting the wires above the house so that the house

could pass under. Thereupon he moved his house forward to such a point that certain skids upon which the house rested projected to some extent across the defendant's track. Thereupon the man who was upon the house came down, the house and the wagon trucks remaining in that position for the further action of all parties.

A crowd had gathered by this time; the company demanded the removal of this obstruction from the track, and with this demand Mr. Sterling did not comply; whereupon, after some talk between them, the work car of the company was moved, first with no very great force, against the truck, striking the skids, but afterwards with sufficient force to strike it and do it some damage. The truck which was struck seems to have been broken from the wheels; the house was dropped at one corner, the chimney fell, the plastering was broken in the house and other damage done which, as the witnesses testified, amounted to considerably more than the amount charged in the plaintiff's petition and sued for.

This is a general statement of the transaction as it occurred up to that point. Later, at some time in the following night, the house was moved across the defendant's tracks and some injury was thereby occasioned to the company's wires. Some hangers were pulled off, or pulled loose, and there was other damage claimed by the company, but the evidence utterly fails to disclose that the plaintiff had any connection with it. Indeed, during the progress of these acts the company, having failed to obtain an injunction from the court in time to restrain the moving of the house across the tracks, caused the arrest of the plaintiff, which resulted in his being taken away from the scene of the operations for some hours.

One of the contentions of the plaintiff in error, the traction company, is that all the evidence of the plaintiff's arrest was improperly admitted by the court and that it created a prejudice in the minds of the jury against the defendant company. This has been a very serious question in our minds, and we should not be disposed to hold that this evidence could properly be admitted, unless upon one of two grounds. The plaintiff had charged in the petition that this conduct of the defendant com-

pany was malicious; there was, however, no urging upon the
court that there should be punitive damages, nor did the court
in its instructions advise the jury to consider such.  The element
of malice, then, was of no especial consequence, and we are
driven to the other consideration, and that is that there was
some evidence that Mr. Sterling was not present at the time that
the house was finally moved.  The defendant had made a claim
for damages against him for injury to its wires and the interrup-
tion of traffic, etc.  Our judgment is that, under all the circum-
stances in the placing of the house where he placed it, he was
not guilty of any violation of the defendant's rights, and that
the company would not be entitled to recover from him damages
by reason of his conduct.  The company may have been, or may
not have been entitled to damages against some persons for the
moving of the house across the tracks in the night season wherein
some damage was done to the company's wires, but there is not
a particle of evidence unless circumstantial to connect the plaint-
iff with that, and we are inclined to think, on the whole, that it
was proper enough for him to show the fact that he was under
arrest and was taken away to a distant point as a sort of an
alibi—as showing that he had no part in whatever feature in
this transaction might be deemed to be unlawful.  There were
one or two circumstances connected with this arrest, the admis-
sion of which in evidence was of very doubtful propriety, but
under all the circumstances of the case we are not inclined to
deem their admission so substantial and important as to justify
a reversal of the judgment of the court below on that ground.

One of the questions concerned the offer of a large number of
persons to go bail for Sterling when he was arrested.  This
evidence should not have been permitted to go to the jury in
our judgment, and it might be reversible error were it not for
another consideration which we have given to the whole matter
and to which I will refer.

There was no evidence by the company as to what would be
the reasonable expense of disconnecting these wires or so to
move them as to permit the passage of the plaintiff's house.  It
is not in evidence that the sum of ten dollars, the price de-
manded, was a reasonable price for the work.  There is no evi-

dence that Mr. Sterling was insolvent—that a claim for ten dollars, or even more, could not have been collected from him by legal process. We think, then, that the company was not justified in the demand that it made, and had no right to make such demand at the time, and if the company deemed Sterling irresponsible, he should have been so notified before the time he brought his house to the track and made his preparations for moving across.

But, however we may deem all these preliminary questions, there can be no possible question that, in the moving of the house, if the company had a right to treat it as an obstruction upon its track, no undue force could be used in removing it. There is no very adequate reason for believing that the company could not have pushed the house back; it was resting upon these trucks with wheels, and it would have required no great force to move the house far enough back to take the skids entirely away from the position in which they were obstructing the passage of cars along the track. No explanation is given of the failure to do this. It is perhaps true, as stated, that there was a crowd present, and the crowd was somewhat threatening in the expressions used, and in its demeanor. There is some conflict on this point, but we may assume that the claims of the company in this respect were well founded. Even this, however, hardly explains to the jury the failure of the company to attempt to move the house by gentler means than it did and without in any way injuring it. The car was butted against the house and did considerable mischief, as I have stated. We think that the jury might fairly have inferred that the company used undue force.

Now I stated that there is a reason why the error to which I have referred might not be deemed sufficient to justify a reversal of the case below. We think that, under all the circumstances of this case, the verdict was an entirely proper one. The evidence discloses greater damage to the plaintiff than that which he sued for and for which judgment was rendered. The result of a new trial, should the verdict be set aside, would probably be, and we think ought to be, the rendition of the same verdict, and, believing that substantial justice has been

done under all the circumstances, we are disposed to allow the verdict and judgment of the court below to stand.

*J. A. & E. V. Bope,* for plaintiff in error.

*S. P. Harrison,* for defendant in error.

---

## AWARDING OF CONTRACTS BY COUNTY COMMISSIONERS.